[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff husband, 53 (d.o.b. 4/9/48) and the defendant wife, whose birth name is Rush, 47 (d.o.b. 10-12-53) married on June 7, 1992 in Westchester County, New York. The plaintiff has resided in Connecticut for more than one year before commencing this action for dissolution, affording this court jurisdiction. The parties have one minor child issue of their marriage, Brent Alexander Middleton, born June 2, 1993. The parties stipulated that they shall have joint legal custody with primary residence with the defendant and liberal visitation, detailed infra.
The parties were both employed when married and each brought assets to the marriage. Although they did not enter into a pre-nuptial contract, they did continue to keep their sole assets separate during the marriage except for a joint checking account maintained for household expenses to which each party contributed in equal amounts. The defendant owns a condominium unit purchased before the marriage now having a stipulated fair market value of $78,000 subject to a mortgage balance of $54,546, rented for $825 monthly which fails to cover the mortgage installment of $728 and common charges of $120. The unit decreased in value as did the mortgage during the marriage. The plaintiff has been employed by I.B.M. since November 15, 1976, (defendant's Exhibit 5) and has a vested pension.
The defendant is seeking an award of part of the plaintiff's vested pension. The plaintiff's expert Robert Preston analyzed the pension benefit, (plaintiff's Exhibit #2). He found the present value, converted to lump sum, to be $185,819 and the portion attributed to the years the parties were married to be $67,206. The defendant's 50% is found to be $33,603 or 18% of the total pension present value, Krafick v. Krafick,234 Conn. 783 (1995).
The defendant worked for I.B.M. both before and during the marriage long enough to have a vested pension having a monthly payment of $633 at age 65. She also has Citigroup stock, acquired prior to marriage, having 1991 value of $6500 and presently $12,400. She has a Travelers 401(k) acquired prior to marriage that increased during the marriage from CT Page 8569 $34,653 to $181, 186. She has a small Fleet IRA opened in 1988 for $2000 now valued at $3658.63. She bought a house in Zanesville, Ohio from her grandmother for $20,000 to provide housing for relatives. It is now vacant. The defendant values it at $3000. She has an Aetna 401(k) acquired during her current employment valued at $6690.
Her current home was purchased in 1991 for $200,000 located at 150 Prospect St., Unit 6. The court accepts the defendant's appraiser's opinion that it is currently worth $270,000 (defendant's Exhibit FF). The mortgage balance is $145,020.
The plaintiff currently earns $1807 weekly gross and $1035 net of mandatory deductions and debt service on stock pledged to secure a $120,000 loan and another $102 weekly net averaged bonus.
The plaintiff owns no real estate and is currently renting his home.
The defendant is currently employed by Resources Connection that places her on assignment with various companies. She lists gross monthly base pay of $4199 and net (before a 401(k) deduction) of $3254 net. She is paid $40 per hour. The defendant has a B.S., an M.B.A. and is a certified financial planner.
The court finds there are several causes of the marriage breakdown. The parties had repeated differences over finances. Each sent money to family members. The defendant bought the Zanesville house. The plaintiffs sums sent to his father were substantial and were deposited in a joint account that stood in both the father's name and the plaintiffs name. Unexplained absences of the defendant from the home at unusual hours led the plaintiff to accuse the defendant of having been unfaithful. The plaintiff was physically abusive to the defendant by grabbing her wrists and pushing the defendant. She made a police incident report, denied suffering injury, and was referred to the YWCA (defendant's Exhibit Y, report dated 9/3/94). In 1998 the defendant renewed a friendship with a man known from college who attended choir rehearsals where the defendant was active. The defendant testified she was dissatisfied with the marriage by early 1999, that in the summer of 1999 her relationship with this man changed, and that they traveled together to upstate New York in the fall of 1999. Although the defendant denied engaging in sexual relations before the summer of 2000, her interest in this other man certainly helped erode the marriage relationship. Several e-mails are in evidence, some sent by defendant's friend and some sent by the defendant. The e-mails from defendant dated July 21, 1999 and July 22, 1999 speak of matters beyond platonic. Her e-mail of October 10, 1999 says "Our spot for next weekend sounds good." And "I will see how the climate is for me to call you tomorrow night." The court has concluded CT Page 8570 that both parties contributed to the breakdown of their marriage. Both parties are in generally good health.
The court finds that the defendant has more formal education than does the plaintiff. The court finds that her earning capacity is at least equal to the plaintiff's capacity. The plaintiff is obligated to pay child support for a child of an earlier marriage, who will be sixteen next month, of $250 monthly. The defendant has no similar obligation. The defendant has been as able to acquire assets as has the plaintiff.
Having reviewed the evidence in light of the relevant statutory and case law the court enters the following decree:
 1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown, and each party is declared to be unmarried.
 2. The parties are awarded joint legal custody with primary residence of the child to be with the defendant mother. The plaintiff father shall have liberal visitation. On alternate weekends he is to pick the child up at the end of daycare or school on Friday and shall return the child to school on Monday morning.
 The child will be with his father on one weekday from the end of school overnight until the following morning when the child shall be brought to school by the plaintiff father. The day for the midweek visit shall be agreed upon by Monday each week.
 Thanksgiving holiday shall be alternated. This year and for succeeding odd numbered years the child shall be with the plaintiff father from Wednesday after school to Sunday after dinner when the child shall be brought to the defendant mother's house. The Thanksgiving weekend is excluded from the alternate weekend schedule.
 Christmas vacation shall be alternated. From the end of school on the last day to January 1 of the following year the defendant mother shall keep the child with her. The plaintiff father shall have the vacation for 2002 and alternate years thereafter. This block of time is excluded from CT Page 8571 the alternate weekend schedule.
 Legal holidays that are celebrated on Monday shall extend the weekend visitation. Each party is given two consecutive weeks of summer vacation time with the child provided the parent is on vacation from employment. At other times the child shall attend summer day camp or similar activity. The defendant mother shall have final decision as to summer camp. The parties shall divide the cost of same as day care is allocated.
 If either party's birthday falls on a weekend allocated to the other parent or Mother's Day or Father's Day falls on a weekend allocated to the other party, the basic weekend visitation schedule shall be overridden.
 3. The plaintiff shall pay child support to the defendant in accordance with the child support guideline's worksheet prepared by defendant's counsel and stipulated as correct by plaintiffs counsel in the weekly amount of $194.78, plus his share of unreimbursed medical expense and day care. A copy of the worksheet is attached and is incorporated in the judgment by reference.*
 4. The plaintiff shall maintain his I.B.M. employee's life insurance (in the face amount of $205,486 as listed on his financial affidavit) naming the parties' son as primary beneficiary for $100,000 of coverage until child support is no longer payable or upon other future court order. This order is fully modifiable and is not a division of assets.
 5. The plaintiff shall continue to cover the child on his I.B.M. medical insurance. Section 46b-84(e) applies to this order.
6. No periodic alimony is awarded.
 7. The defendant is awarded an 18% portion of the plaintiff's defined benefit I.B.M. pension that is vested to today when judgment is being entered. The plaintiff obtained his current pension from CT Page 8572 11/15/76, 24.5 years. He was married for nine of those years. The division shall be made by way of a QDRO.
 8. The defendant is awarded 450 shares of defendant's I.B.M. stock.
 9. All other assets shall be retained by each party as same are now owned.
 10. Each party shall be solely responsible for liabilities as the same are scheduled on that party's financial affidavit.
 11. Each party shall pay the litigation expenses incurred by that party.
 12. The defendant's birth name may be restored if she wishes.
 _____________________________ HARRIGAN, JUDGE TRIAL REFEREE